## The Angela Maria.

### Mantout *v.* The Angela Maria.

*(District Court, D. South Carolina.  June 21, 1888.)*

Maritime Liens—Priorities—Bottomry—Master's Wages—Italian Vessel.
 In distributing the proceeds of sale of an Italian vessel sold by an order of the court in proceedings to enforce a bottomry bond given in Algiers on vessel and cargo, on which bond the master was not personally liable, the lien of the master for his wages, secured to him by Italian law, sustained as against owners of the cargo, who are American citizens, assignees of the bill of lading made in Italy to Italian residents or order.

*(Syllabus by the Court.)*

In Admiralty.
*Smythe & Lee,* for libelants.
*J. N. Nathans,* for vessel and master.
*Barker, Gilliland & Fitzsimons,* for the cargo.

Simonton, J. To understand the precise question before us a brief statement of facts will be needed. The Angela Maria, an Italian vessel

under the Italian flag, loaded a cargo of sulphur under a charter-party, and sailed from an Italian port for Charleston, S. C. The charter-party was made in Italy, and is in the Italian language. It hires the freight-room of the vessel. The bill of lading is to the order of the charterers, is indorsed by them, and is held by Pettus and Petit, citizens of this country. On her voyage she met with stress of weather, and, being at sea in distress, was towed into the port of Algiers by a British steam-ship. After repairs she resumed her voyage, the master having executed a bottomry and *respondentia* bond upon her hull, freight, and cargo, at Algiers, to libelants. Arriving in this port, she was libeled on this bond, and has been sold under the order of this court. The proceeds of sale are in court, and bond has been given for freight and cargo. The crew have been paid the balance due on their wages up to the day of sale. The master and mate now ask for their wages. The shipping articles are in evidence. They are signed by the master and mate, and in the column for the wages are the words "special agreement." This was in writing. It has not been produced, but parol evidence of its contents was admitted. The master was to receive 250 liras per month, and a commission of $2\frac{1}{2}$ per cent. on the freight, with a gift of £10 on arrival at port. The mate was to receive 150 liras per month. The question is, have they a lien on the ship for their wages? Under our law the master has no such lien. Desty, Shipp. & Adm. 117, 118. Under the Italian Code he has. By article 675 of the Italian Code of Commerce the following claims are privileged upon the ship, and rank against its proceeds in this order: (1) Law costs; (2) salvage services; (3) navigation dues; (4) pilotage and custody; (5) expenses of storage; (6) expenses of maintaining the ship, etc., since its last voyage and arrival in port; (7) wages, emoluments, and compensation due to the master and any other person of the crew for the last voyage; (8) contributions for general average; (9) bottomry bonds, etc. *The Olga*, 32 Fed. Rep. 330. In this respect the law of Italy conforms to that of England, (Williams & B. Adm. Jur. 204;) of Holland, (*The Velox*, 21 Fed. Rep. 479;) and of Germany, (*The Graf Klot Trautvetter*, 8 Fed. Rep. 833.) The claims against the proceeds of this vessel are port dues; pilotage, etc.; supplies and advances made to her, a foreign vessel in this port; repairs on her here; seamen's wages; bottomry bond; a claim for general average; these wages for master and mate. The liens for port dues, pilotage, etc., supplies and advances and repairs made here, would be first recognized by this court. *The Olga, supra; The Selah*, 4 Sawy. 40; Story, Confl. Law, § 327. But with respect to the bottomry bond, (Mac. Shipping, 63, 170,) charter-party, bill of lading, and the wages of master and mate, these contracts made on Italian soil or under the Italian flag are regulated as to lien and priority by the Italian law, which this court will enforce by comity. *The Brantjord City*, 29 Fed. Rep. 373; *The Olga, supra;* Hen. Adm. 97; *Covert v. The Wexford.* 3 Fed. Rep. 577; Williams & B. Adm. 201, 202. When the charter-party was made, or the insurance effected, or bottomry bond made, each party to the contract knew or had notice that, under the Italian law, governing that vessel, in case of her sale the proceeds would be divided ac-

cording to certain priorities; and he made his contract subject to these provisions. All the courts of the United States have recognized and enforced foreign liens, as between foreigners, in accordance with the law of the flag. *The Scotland*, 105 U. S. 24, and cases above quoted. Indeed, so far as the bottomry bond is concerned, claims for salvage, damages, wages accrued during the voyage, pilotage, towage, and dues of this character must be satisfied before the ship and freight can be applied to bottomry claims. Carv. Carr. by Sea, § 397; *The Bark Irma*, 6 Ben. 1; *The Edward Oliver*, 1 Adm. & Ecc. 379. It has been urged with much ability and earnestness that we are not now administering the law as between foreigners, that the owners of this cargo are American citizens, and that they set up a maritime lien. This maritime lien arises in this way: The cargo has been put under bottomry bond for the benefit of the ship. If it or any part of it had been sold for the benefit of the ship, clearly the owners of the cargo could to that extent have a claim and lien for reimbursement enforcible against the ship. Now, the whole cargo has been hypothecated, conditionally sold for the benefit of the ship; hence the owners of the cargo must be protected by a lien. The case of *The Edward Oliver*, above quoted, is opposed to this view. Indeed, the argument itself, plausible as it seems, will not bear examination. This claim of the cargo is based on the conditional sale by the bottomry bond. If that bond be not enforced, it cannot arise. If the bond be enforced, the ship and freight must be exhausted before the cargo is reached, (Williams & B. Adm. 66, 68; Carv. Carr. by Sea, §§ 317, 318;) that is to say, the cargo cannot be touched until ship and freight are used. If so, when the claim of the cargo arises, the ship and freight are gone; there is nothing to act upon. But it is insisted that when the proceeds of the vessel are used for this purpose, they must not be reduced, before their application, by the payment of the wages of the captain. Now, as we have seen, under the Italian law, which controls the authority of the master to make the bottomry bond and the construction of the effect of that bond, the wages of the captain are preferred to the lien by bottomry. How, then, can this claim of the cargo, which is dependent upon, arises from, is a consequence of, the bottomry bond, be superior to the lien of the master, which has priority over the bond? *The Irma*, 6 Ben. 1. Besides this, the American owners of this cargo are such owners by reason of the bill of lading to order, transferred to them by indorsement. A bill of lading is not a negotiable instrument, under the law-merchant. The transferee is effected by anything which would affect his transferer. The transferers are Italians, under an Italian contract made in Italy, bound by Italian Law. The holders of the bill of lading are at best the assignees of an Italian contract. The bottomry bond is not in the form which imposes a personal liability on the master. Dixon, Shipp. 28. If he was justified in giving the bond, it cannot interfere with his proper claim. If he gave the bond without authority, so that the cargo is not bound, the owners of the cargo will not suffer by the payment of his wages. Let an order be prepared for the payment of the master and mate out of the fund in court.